All right, I believe everybody is settled. Mr. Brown? Good morning, Your Honors. Good morning. We would submit to you that the operative principle that should determine the issues before the Court this morning is that the District Court had a virtually unflagging obligation to exercise the subject matter jurisdiction that was given to it in the words of the United States Supreme Court in the Quackenbush case. Here, the District Court, after finding that the case was properly removed and that the Court did in fact have bankruptcy-related jurisdiction, chose to decline to exercise that jurisdiction without ever addressing or exercising its independent mandatory diversity jurisdiction arising from the improper joinder of a non-diverse non-resident, that being my client, Skadden Harps. Your Honor, the District Court had no choice but to do that. It was duty-bound. Okay, walk me very crisply through how we have jurisdiction, because this is a very, to me, it's a very fine little thread here, jurisdiction over a District Court remand order. When the District Court finds removal jurisdiction and subject matter jurisdiction at the time of removal, before it may decline to exercise that jurisdiction on discretionary grounds, it must address independent grounds for subject matter jurisdiction that exist at the time of remand. As this Court found in the Enrique Campos decision, the Cuevas decision, and the Vann Court decision, which was decided last fall, we supplied that to the panel with a letter, the analysis switches. When there is jurisdiction at the time of removal, the analysis switches to other independent grounds of subject matter jurisdiction that exist at the time of remand. We submit that the failure of the District Court to address the grounds of that independent subject matter jurisdiction or exercise it was legal error that is reviewable on appeal under the U.S. Supreme Court's decisions, both in Quackenbush and Thurmtron. The failure to address the very ground of diversity jurisdiction, which was the improper jointer of my client, is legal error that we submit this Court has jurisdiction. If we end up agreeing with you that we have jurisdiction to consider this and that the District Court should have looked at the whole improper jointer of Skaddenarf's issue, then should we remand for that determination or should we make that determination? I would submit that the Court has everything it needs right now to make that determination. What's the better practice? I mean, I understand you've read your argument, but what's the better practice here? I would submit here where the District Court had multiple opportunities to address the issue and didn't, the better practice would be for this Court to exercise its discretion and ability to do that now so the diversity jurisdiction can be determined. Here, the record before this Court is undisputed that my client had no relevant independent contact with the Louisiana Forum relevant to the plaintiff's claims against Skaddenarf's. I hear you, but I just don't recall that we would normally exercise plenary authority to do what you said, pretty much these remand or these cases. We might remand to the District Court with instructions to do X, but I'm not so sure. I'm not saying you're wrong, but I'm not so sure about sort of because we can, so to speak, that we would exercise . . . I mean, I get your point. But, you know, whether or not we would exercise plenary authority, my recollection in these kind of cases, et cetera, I mean, we might remand to the District Court to either make an express finding or directions or something like that, but I just got to think . . . The U.S. Supreme Court in the Singleton case and this Court in the Collego case both recognize this Court does have the discretion and power. Quite simply, if this Court has appellate jurisdiction, which we submit that it does, it has the power to do this, and we submit that it should do so, particularly here where the District Court declined multiple opportunities to do it. What about their point that they would have done more discovery over Skaddenarf's connection with Louisiana if that had been the central focus in the District Court? I mean, in other words, remand and let us develop the evidence of their contacts and whatever and have this thing fully decided. You're making it sound like, well, we can just look at the record, but they're saying there is more record yet to come. Well, in this circuit it's well settled that if there is no basis or justification for jurisdictional discovery, it shouldn't happen. Your Honor, if there had been any relevant contact by Skaddenarf's with Louisiana, it would have been with the plaintiffs. They were the only people in Louisiana involved in this investment. They reached outside of Louisiana to engage in an offshore investment, so they should not be surprised that this case would be in federal court. If there had been any relevant independent contact, it would have been with them, and there is nothing. But isn't that based on a lot of assumptions that they're allowed to investigate? I know they haven't raised the issue of general jurisdiction. They're focused now on specific jurisdiction, but for us to decide this issue on appeal, we're dealing with different standards too, right? Because you have the standard the judge was dealing with on remand, but then personal jurisdiction. Sometimes a court can have a hearing and weigh some evidence. You've put forth some evidence, but if they never had an opportunity to discover that, why should we be making that decision at this point without a live record? I would submit that in this particular case, because if there had been any relevant contact with Louisiana, it would have been with them, but they have no affidavit, no witness, no e-mail, no document of any contact by my client with Louisiana relevant to their investment. There is simply no reason for jurisdictional discovery or any kind of a hearing. There just is no reasonable possible basis for the court to assert personal jurisdiction over my client. So what the plaintiffs have done, acknowledging that, they're focused on this idea of foreseeability of impact, which the U.S. Supreme Court has said doesn't work in the Walden case. There was a much stronger case in that Clements v. McNamee for sort of an effects test, and it was 2-1 and I dissented, so that's the law of the circuit. There, there was even the guy came to Texas and all that, and that wasn't good enough. So, Your Honor, it seemed to me that the door is closed on that legal theory, and they just have nothing else. It is undisputed. So whoever has the burden of proof, we submit the plaintiffs have the burden because this is a constitutional right of my client under the Due Process Clause not to be hailed into a jurisdiction when there's no basis for jurisdiction. But even with respect, without respect to the burden of proof issue, there just is no basis for assertion of jurisdiction over my client, and the district court never addressed that basic issue. Can I address the argument that the sort of improper joinder idea is based on a 12B6 sort of analysis? In other words, you couldn't state a claim against these guys rather than you couldn't state a claim against these guys in this state? Well, I think in the Villar decision, this court made clear that improper joinder can indeed arise from absence of personal jurisdiction over a nonresident. That concept is really implicit in 1441b2, which focuses upon whether people are properly joined or not, so that in the Villar case this court made clear that when absence of personal jurisdiction is the very ground of improper joinder and therefore diversity jurisdiction, the district court, quote, must necessarily address the issue of personal jurisdiction regardless of which motion it addresses first. So even if in this case the district court, you know, had addressed the issue, it had to address it at some point, either on the motion to remand or on our motion to dismiss, it couldn't just ignore the issue, which is what happened. The magistrate judge did not reach the issue expressly because the district court had deferred consideration on it. And then when it went back to the district court, the district court never reached the issue. But I think the court seems to be hung up on the idea that there's this sort of sequencing that you can do of jurisdiction, and your point is a little bit different, and I'm not sure the district court ever quite connected with you guys on that. It wasn't for lack of trying, Your Honor. I'm not going to find fault on one side or the other, but it doesn't seem like the two of you all connected on the point that you're not talking about, well, we can decide this form of jurisdiction versus that form, but rather that you cannot decline diversity jurisdiction if properly brought to you. Therefore, you have to look at the improper joinder, and I don't think that connection was really made. And, Your Honor, that was legal error. We certainly made that point to the district court repeatedly, both before and after the matter was referred to the magistrate. And the district court did not absorb the issue, did not connect on the issue, perhaps. That was legal error, and that's just the kind of legal error that this court has jurisdiction. That's why you argued so vehemently for us to decide. Well, yes. You may still not connect. Yes, Your Honor. I would also like to really make the point very clearly that the Ruergas choice didn't exist here. In Ruergas, the party raising lack of personal jurisdiction was not the improperly joined party. It was just a nonresident that wanted to get out of the case early and before the court turned to more complex issues of subject matter jurisdiction, and the U.S. Supreme Court ruled that in that context there was a choice. The two rights, the constitutional right not to be hauled into a jurisdiction absent at minimum contacts, is of equal dignity with the statutory diversity jurisdiction issue, so the court had that sequencing choice. That is not the issue here. The U.S. Supreme Court did not address the issue here that when personal jurisdiction is the very ground of improper joinder and the very ground of diversity jurisdiction, as this court found in VLAR, the court must address the issue. So state it succinctly. Precisely what is it you want this panel to hold? We submit that the court should reach the improper joinder issue, dismiss Skadden from the case, and remand for further proceedings under the federal district court's diversity jurisdiction, and, Your Honor, there is an alternative ground for this court's appellate jurisdiction and reversal, and that is the chapter 15 issue. The district court abstained from exercising bankruptcy-related jurisdiction in direct contravention of the express language of 28 U.S.C. 1334C1, which carves out cases with respect to chapter 15 from that extension. That's another little dance because you've got the issue of at what point in time do you weigh that, and then also it's discretionary except the chapter 15, but it's also not reviewable, but you say it's reviewable because the court didn't understand its statutory authority or requirements, and so there's a lot of dancing on that argument too. Let me dance a little bit on that. Okay. Why not? It is New Orleans. First, there's no dispute on appeal before this court that this case is related to those currently pending chapter 15 cases. They are filed. They are pending. The Cayman liquidators are acting pursuant to them. The recovery in this case will clearly affect the assets and liabilities of those bankruptcy estates. There's really no dispute about that. Here, there's also no dispute that abstention is not available in cases related to chapter 15. That is a legal error. The anti-review provisions of 1452 and 1334 don't apply because we're not challenging the district court's exercise of discretion. We're saying it had no legal authority. Isn't that a cleaner avenue for you than the primary argument? Pardon me? I mean, isn't that a cleaner avenue for you, the alternative dealing with the chapter 15, than, I'm not asking you to give up the other one, but I'm saying, isn't that a bit more straightforward for the man? I would say it's equally applicable. You think it's all really simple. It's just that all these judges just haven't been able to figure it out. It's simple to me. But, you know, Judge, I love this stuff. It's simple to me. Good for you. But then you have the problem there of then we have to, and I'm not sure this is without precedent, but we have to say that the chapter 15 had to be extant at the time of remand rather than at the time of removal. Generally, removals are judged at the time of removal. Your argument is that this is a little different, and we can look at it at the time of remand. That principle does not apply when, as here, there is subject matter jurisdiction at the time of removal. Here, as this court ruled in Vann, Court, and Cuevas, the analysis shifts to what was the state of play at the time of remand. Here, these chapter 15 cases were pending. They were brought to the attention of the court. The magistrate judge took notice of them but simply forgot about the carve-out for cases related to chapter 15 cases. And if the court— Is this another lack of connection when you brought that up to the district court, the forgetting? I would say so, Your Honor. It's just the kind of legal error that ThermTron makes clear this court has the legal authority to review when the court acts beyond its statute. The principle of law is that if at the time of removal there is subject matter jurisdiction, which everybody agrees there was under the bankruptcy point, then the court can and should consider later evolving events in determining the remand question, and the later evolving event would be the filing of the chapter 15 case. That's correct, Your Honor. And the Vann Court case, the Cuevas case, make that. We've cited the case to multiple decisions where courts have looked at post-removal developments that do not destroy but further solidify jurisdiction. If you've got an engine on your airplane that gets you into federal court— Oh, let's not talk about airplanes. Not after last night. Thank you. We've cited multiple decisions in which the court has looked to post-removal events that further solidify already existing jurisdiction and provide additional alternative grounds. The Davis case, the Caterpillar case, the Chabner case, other cases, and they fully consist with the court's reasoning in Cuevas, Vann Court, and Re Campos that when a case is properly removed, before it may be remanded, the court has to look at other existing grounds. All right, Mr. Brown, I'm going to shut you down. I was looking for commas, but it looked like you were pressing— I mean, I was looking for a period, but you were putting commas in that argument there, pressing on. I think we've got you principally. You've reserved time for rebuttal to come back up. Thank you, Your Honor. All right, let's hear from Mr. Price. I have a feeling he's not going to agree with you. Well, Mr. Brown wants to get rid of 130 years of jurisdiction on the Fifth Circuit not being able to look at the jurisdictional issue. Well, somebody had to make the international shoe argument. Well, I would think, though, that there's three Supreme Court cases that deal with the fact that even though if the district court is in error, it's not reviewable by the Fifth Circuit. There's a whole policy line of cases of which we cite in our brief that essentially says if it relates to subject matter, then it's not reviewable by this court. Why is that? Well, not if it relates to, but if the court finds a lack of. But here the court did not find a lack of subject matter jurisdiction. Well, if you look at the report and recommendation, it's only in there four times that they say that there's no diversity jurisdiction. It's in the report and recommendation. And what is unusual about this case is that— Okay, but there's no subject matter jurisdiction. Nobody questions on the bankruptcy. Well, Skadden admits they're not diverse. That's what you— Wait, wait, wait, wait, wait, wait. We're talking about subject matter jurisdiction. You can have federal question or you can have diversity. Nobody disputes that the district court has federal question jurisdiction here under the bankruptcy removal, right? That's right. From the get-go, from day one of the removal. That's right. And nobody disputes that 452 doesn't allow it to be reviewed. Okay. But that's important because they were not saying that the court lacks jurisdiction. We're saying a couple of different things,  There's the issue of the equitable decision to remand. There's the issue of the improper joinder. And do you have to address that and all that? But there's no question here that the court has subject matter jurisdiction. Well, Judge Haynes, the way that I would say it is is that if it was a bankruptcy case, 452 doesn't allow this court to review it. If it's a diversity case, then the law doesn't allow it to review it. So why should the fact that both claims are brought in the same proceeding lead to the conclusion that this court has jurisdiction? If you look at footnote number one of Cuevos, it's probably the answer to this case. And footnote number one of Cuevos says if the basis of the removal and the basis of the remand are mentioned, then it's subject matter jurisdiction. So the issue that this court has to look at is what is the reason that the case was remanded. And it's the stated rationale, and we've adopted that rule in this court. What's the stated rationale? All three cases, Cuevos, Felon Court, Adair, are 367 abstention cases where discretion was exercised. They're 367 cases. So 367 is never mentioned as a rationale for argument in this case. Now, if you go and focus on the first decision that's made, it's Ruegas. And what does Ruegas say? Judge Stewart has lived with this case, I know, for 15 years. Isn't that right? And the effect of that case is that in the district, in the Fifth Circuit's opinion as well as in Bonk, they state the proper rationale for why we need to be careful about stepping on the state's toes in these type of cases. And it must be clear it's not new law that's created. Now, if you look at Ruegas, Ruegas says the district court has the discretion to consider personal jurisdiction or it has the discretion to decide subject matter jurisdiction. Okay, but where the personal jurisdiction is the whole key to the subject matter jurisdiction. Their argument is a little different from that because it has to do with saying the whole improper jointer, the whole question of diversity jurisdiction turns on the personal jurisdiction over scatter. Now, I know you're saying that's not a relevant consideration. Well, that's the first issue. I know that. But put that aside for a minute. If it is true that improper jointer can be based on joining somebody over whom there's no diversity, no personal, I'm sorry, oh, no personal jurisdiction, if that is a basis to claim improper jointer, you joined some guy from, you know, Alaska who's never been to Texas, has never been to Louisiana, has nothing to do with Louisiana, and you just joined him to defeat diversity jurisdiction, if that is a potential argument, then why doesn't that change the whole Ruegas line of thinking? Right. And, I mean, essentially by making the argument as you just posed it, it becomes a subject matter jurisdiction issue. Okay. I mean, it is the way that you just posed it makes it a subject matter jurisdiction issue, which is not reviewable. Okay, but it refuses to make that decision. Well, it only falls into three categories. It falls in discretionary, as Mr. Brown notes, it's either a subject matter or it's a personal jurisdiction area. Now, in the standard under Ruegas, look at what the district court had to decide. The district court had to decide that the personal jurisdiction issue was not straightforward. Otherwise, it would be an abuse of discretion. You never hear the other side say that the district court abused its discretion by electing not to decide personal jurisdiction first. Well, why did they decide not to decide personal jurisdiction first? Because it was not a straightforward issue. Because the course and conduct of Skadden that establishes personal jurisdiction is the same standard that establishes the merits. Now, let me go to the Smallwood standard. They never argued the right standard, and Mr. Brown argued it the way that they argued it. They said that we have the burden of proof. Well, if you look at the Smallwood case in this circuit, it's clear that they have the burden of proof, and the standard is no possibility. That issue was never raised at the district court that there was no possibility of personal jurisdiction. So how can there be an abuse of discretion under Ruegas if, number one, 1367, discretion was never argued? They never stood up and said, look, district court, you've got to decide personal jurisdiction first because you have an unflagging obligation. That's a real important thing. Before the Ruegas decision, the word unflagging obligation was never mentioned. The word unflagging obligation was never mentioned before the report and recommendation. So if they wanted to make the argument that personal jurisdiction had to be decided first, they needed to raise it prior to the time that the court ruled on Ruegas. And I would respectively submit to the court that it's a Johnny come lightly argument, 1367 argument, which we all acknowledge that under Quackenbush that that is an exception. It's just that it's not applicable to this case because it's not a 1367 case. And Quackenbush specifically says that an exception to this rule is based upon federal state comity. So it's not an unconditional rule. So how does this court reconcile what they say is an unconditional unflagging obligation with 130 years of jurisprudence in this country that says that even if the district court is in error, we're not going to allow appeals courts to review these issues because of the fact that there is a special relationship? Judge Stewart, as you stated in the original First Circuit opinion, there's a special relationship between the state and federal government when you have dual jurisdiction. And this is the best we can do. And as the Supreme Court of the United States says, if you want to change the law, Congress needs to change it. But right now, for 130 years, there has been a special relationship that have existed between states and the federal government. And because we want these cases to move on an expeditiously basis and we don't want them to interfere with state issues, then the cases should not be appealed. This one is two years old. It's severely impacting three Louisiana pension funds by virtue of what has gone on. But the reality is that they fail on every argument that is raised. Number one, the court does not have jurisdiction based upon the historical law. Not that the court was right or not that the court was wrong, but the law was clear. Number two, it's not a 1367 in all the cases that have been decided. To create an exception to that narrow rule are 1367 cases. Number three, under Ruergas, they don't argue abuse of discretion. And you can't just say we're going to not consider a Supreme Court case that deals with personal jurisdiction because the abuse of discretion standard and the fraudulent joinder or the improper joinder standard are the same. The district court would have abused his discretion if it was complex or if it was simple, as they suggest. Because that's what Ruergas says, is that you have a choice. District court, you have a choice to consider subject matter. This court and the Embank court stated that you had to absolutely consider subject matter jurisdiction first. The Supreme Court said, no, the district court has the discretion to consider subject matter jurisdiction first. You have the discretion. The position of Skadden is there's an unflagging obligation to consider personal jurisdiction first. So they have gone to the extreme. I don't know what they're saying. They said there's an unflagging obligation to consider diversity jurisdiction, and where personal jurisdiction is the argument for improper joinder, then that's where it comes up, not just in general, just kind of randomly you have to consider personal jurisdiction. And it's the argument that I was making just a while ago, Judge Haynes. I mean, you guys aren't connected. That's subject matter jurisdiction. I mean, there is, but it's not the finding that there isn't. There's a failure to address. That's what they're arguing. Well, they argue there's a failure to address, but what is unique about this case is that Skadden admits they're not diverse. They put that in their pleading, okay? So there is a prima facie determination, unlike all these other cases, that it's not diverse. Nobody's arguing about whether it's diverse. They admit that diversity doesn't exist. Nobody has ruled yet on the improper joinder question. Okay, so let's look. That's the bottom line of their argument on that. Okay, and what I submit to you is twofold. Number one, that the rural gas determination, okay, where it's not straightforward is the improper joinder determination because they're saying that it's not straightforward. Otherwise, it would be abuse of discretion. Secondly, the burden of proof switches under fraudulent joinder or improper joinder, and the burden of proof is on them, not us, when it goes to an improper joinder. Well, they say Skadden hadn't been to Louisiana and doesn't know anything about Louisiana, and therefore they've met their burden of showing that Skadden is not. And my response to that is pervasive software says if I allege something in the complaint and they don't contest it, which they didn't, then it's assumed to be correct. Now, in my case, I allege that, number one, they were counsel for the company, and they were, and we put an insert on that. Number two, they prepared to offer a memorandum, and they did. Number three, they list themselves as counsel in the memorandum. But all this kind of analysis stuff, I mean, it just, you know, look, if I'd been in charge, Clemens v. McNamee would have come out the other way, but, you know, it is what it is. But they sent the memorandum to Louisiana. They knew that the Louisiana funds were the only people buying, and they knew they were responsible for Louisiana securities law. Now, to rule that there's no personal jurisdiction over them at this stage of the case would essentially be saying that a state security agency doesn't have any personal jurisdiction over anybody that violates the state securities law. That has not been the holding in any law in the United States in any circuit or anything else. But that's, in essence, what our argument is. They violated the Louisiana blue sky law, and we feel that that issue should be controlled. So the bottom line on the thing is that we believe that Smallwood puts the burden of proof on them. They never argued that Smallwood was applicable. They had the burden of proof, and as a result of that, they didn't contest our allegations. And if you go to the merits of our allegations, we think we prevail because of the fact that they knew they had to comply with Louisiana securities law. That, in and of itself, creates the jurisdictional base for the action being brought in Louisiana for violation of Louisiana securities law, which they knew. ...chapter 15, that once there was jurisdiction in the district court, which there clearly was, then the question turns to, at the time of remand, what were the facts and circumstances, and at the time of remand, chapter 15, cases were pending. Right. And let me move to that. Let me just say the Tenth Circuit just decided a case this weekend. It's Western Insurance 215 Westlaw 1867300, and it's the stated rationale rule. And it essentially says, what is the rationale for the decision? I would respectively submit the rationale here is clearly subject matter jurisdiction. Both of them are diversity, and both of them fall within the exception, and the exception which they attempt to drive through is very narrow, and it's not a stated rationale. As for the chapter 15, you're right, it was filed afterwards. As was noted in the magistrate's ruling, the chapter 11 proceeding gave us the right to file these claims. That's ultimately the reason why the district court and the magistrate concluded that we have a right to bring these claims in state court is because that bankruptcy order specifically gave us that right, of which leverage and arbitrage agreed to that plan. So the district court ruled that, as a practical matter, it didn't affect the bankruptcy of the state because the bankruptcy had been closed and that we got the rights by virtue of the ruling that was made in New York. The other thing is 1452B doesn't have the language that chapter 15 is excluded, which is the basis for the remand. Chapter 15 only applies to claims by a foreign representative. It doesn't apply to claims that they would bring, and that's under Section 1521 and 1523. All the cases cited by them are cases where the bankruptcy court chose to retain jurisdiction. They're not cases where they were remanded, so that's the reason why they were reviewed, because the court chose to keep it. And then there was never any notice amendment to the notice of removal for the chapter 15 proceeding. And finally, the demolification claims cannot be brought to the chapter 15 proceeding. In other words, where they're related to the chapter 11 proceeding, those claims cannot be brought to the chapter 15 proceeding because the foreign representative is the only person that can bring those claims. That either means you're really wrong. No, I was getting ready to say whether he wanted me to quit arguing. If this court decides that we have jurisdiction to hear this matter, is the record right for us to decide personal jurisdiction, or would discovery have led you to any more information that would be of significance? I'm sorry, I'm just a— Oh, I said if this court were to decide that we have jurisdiction over this matter. Right. Is your position we can go ahead and proceed to decide the personal jurisdiction issue, or is there something not in the record? Would you have discovered something in your discovery request? Well, I don't know what I hadn't discovered. That's obvious. Well, they say everything was in your control. Anything that could have been discovered. That's right. I mean, if they're willing to stipulate that they had knowledge that the offering was only being made to the Louisiana citizens and that they had an obligation to comply with the Louisiana securities law, and if this court were to determine that, yeah, and they knew that the offering was only going to Louisiana, that there's no personal jurisdiction, I would say go ahead and decide the issue. That's really what the issue is, because taking the facts most favorable to us, as we allege them in the complaint in this pervasive software, there's no law to support their position that if they knew, the SCAD knew they were required to comply with the Louisiana securities law, and they knew that offering was coming to Louisiana, that they wouldn't be subjecting themselves to the jurisdiction of the Louisiana courts. I mean, the law is almost universal on that. So, but they hadn't contested it. But the long and short of it is, is that for you to get to that position, you've got to jump a high bar. In other words, the standard for fraudulent joinder is no possibility, that we would have no possibility of getting personal jurisdiction. And that's before discovery. And it was respectfully submitted to this court that they do not meet the Smallwood standard. And I'll leave you with this thought. Smallwood doesn't apply to personal jurisdiction. If you look at the second factor in it, it will be a new ruling of this court if you say that improper joinder applies to jurisdiction. That's the Lidlenberg case. Thank you. All right. Thank you, Mr. Price. Mr. Brown? Yes, Your Honor. Just a few points on rebuttal. First, I believe I just heard my opposing counsel acknowledge that if the issue of SCAD's knowledge of whether or not this offering document was going to go to Louisiana is irrelevant, this matter is ripe for determination by this court. It is not relevant. As the Walden court held, and other courts have held, regardless of whether or not On this point that they know that they have to comply with Louisiana securities, I mean, what about the argument that you've got a law firm preparing an offering document that's supposed to comply with Louisiana blue sky laws, and let's say it doesn't, okay, just for purposes of argument, that it doesn't, and yet they're going to say na-na-na to the Louisiana regulators and say you don't have any jurisdiction to do anything to us. Your Honor, I would submit that that is the law. If the issue of the merits, whether or not the offering memorandum complied with Louisiana law or not, is separate from the issue of jurisdiction. No, I get that, but my point is your argument then is that even though this is the law firm advising the people that are doing an offering solely in Louisiana, which therefore has to comply with Louisiana state law, that they can avoid any liability. I'm not talking about to these firefighters. I'm talking about if the Louisiana regulatory people said, hey, wait a minute, Skadden Arps, you violated section XYZ of our code, and you say, well, tough, we're not ever coming back to Louisiana. Your Honor, the issue of whether regulatory authorities would have jurisdiction over Skadden is a separate jurisdiction. Why is that a separate jurisdictional argument? Because we're here dealing with claims, civil claims brought by private litigants. I know, but it's the same Constitution. It's the same international shoe. It's the same 14th Amendment that we analyze. Your Honor, for example, the federal securities laws provide for nationwide service of process. Okay, but Louisiana can't do that. That's my point. Because Louisiana can't do that, that's why minimum contacts and the due process clause exists. The plaintiffs can sue Skadden in New York, where Skadden operated, and Skadden did the legal work that's the subject of their claim. The issue is not what did Skadden do or fail to do, and we certainly don't agree with their claims on the merits. We don't agree that the offering memorandum— But you have to concede their claim on the merits to make your argument. We do, for the purposes of what's before this court today. The issue of what Skadden did is not the issue. The issue is where did it do it? And it is undisputed that everything it did relevant to their claims it did in New York, dealing with its client in New York. And the law is very clear that the law firm's client's contacts cannot be imputed to the law firm. If that were the law, the national law firms that do work for clients to facilitate securities offerings in particular states, the law firms could be sued in every state in the union. That is just not the law. The law is to the contrary. So if, as Mr. Price just suggested to the court, the only issue is whether Skadden knew or didn't know that these offering materials were going into Louisiana, that is not a relevant issue. That, I believe, is a concession that this matter is right for decision by this court. There is no dispute that my client had no relevant independent contact with Louisiana. Can you respond to his Chapter 15 because it was fairly dense, I thought, and I want to be sure that you've pointed to those points. I want to go back and look at it in light of what he said, but you only have a few minutes. They don't dispute on appeal that this case relates to two ongoing pending Chapter 15 cases. But he says 1452B doesn't say Chapter 15 is excluded, and then he also says that sort of the matters at issue there aren't the matters at issue here. Well, they are. He's saying something at the very end that frankly I'm going to go back and listen to the tape to get clear in my head, but I wanted your response to it. It is true that Section 1452 as drafted does not include the Chapter 15 carve-out, but this court frequently reads jurisdictional statutes together, just as it reads 1447D together with 1447C to limit the anti-review provisions. So it would make no sense not to read 1452 in conjunction with 1334. 1334 expressly carves out cases related to Chapter 15 cases from permissive abstention. It would make no sense not to read 1452 the same way because it's the same issue. Should it go forward in federal court or state court? The legal standards are the same, as the magistrate's analysis makes clear. The result is the same. It either is in federal court or state court. It would make no sense whatsoever. And there was nothing else that he said that you want to address? Oh, no, there's some other things. Okay, quickly. Well, right before you go to that, but back on the point Judge Chayes issued, I heard Mr. Price say that Chapter 15 only applies to claims by foreign representatives, and, ergo, Skadden is not one. But I would just— No, I'm wanting you to—that's what I wrote down. I mean, it was all going pretty rapidly, but that's what I wrote down. So what's your response on that? I would just refer the court to the language of the statute. 1334 grants very broad bankruptcy jurisdiction to cases related to Title XI cases. Chapter 15 cases are Title XI cases. But it carves out of the ability to abstain from those cases, cases that are related to Chapter 15. It says, except with respect to cases under Chapter 15. You made me say it's not really related to because only the—I don't know. I don't know what he was saying. It clearly is related to. The test for related to is conceivable effect. Could this case have a conceivable effect on the Chapter 15 cases? Of course. The Chapter 15 liquidators are seeking to recover the very same losses that the plaintiffs are seeking to recover in this case. You can't recover twice for the same loss. So there's just no question about that. And I would submit that that statutory error, it's not a question of abuse of discretion. It's a question of legal error, and that is reviewable on appeal under the Therm-Trime case. And the Ruhr gas case, Your Honor, has nothing to do with the issues before this court. That's a relief to Judge Stewart. And because that was an issue of personal jurisdiction that was not intertwined with subject matter jurisdiction, Judge Haynes, as you've acknowledged, the issue here is subject matter jurisdiction and the failure to address the very ground of diversity jurisdiction. Well, the more you've argued, and both of you have, from my ears, this sounds far and away from anything we ought to decide as a plenary matter. Failure to consider striations of Chapter 15. I mean, notwithstanding, it may not be fact-bound, but it just seems to me that sometimes y'all are arguing, you know, like out here on all these, and they're intertwined in the point Judge Haynes made earlier. You know, there's just some real delicate balances here, you know, weaving and bobbing between these matters. And it's worrying me about any kind of, I mean, not so much whether we have jurisdiction, but whether any kind of plenary ruling from this panel, just listening to the two of you, you know, about all these issues. So I'm just not sure within the Chapter 15 piece, just sort of taking on a whole other dimension, maybe because the way it's been argued, we have to go back in the breeze, but whether that's an independent basis or, as I said earlier, a cleaner way to get back, but particularly where a matter was, quote, not considered by the district court. So I guess I'm just going to ask you one more time. I mean, I know what you want, but, you know, in the best case scenario, but it just, assuming, just assume, the red light's on, and, you know, it's one of the perks of the job. You can't go nowhere until I let you go. Assuming, though, we were of the other mind, and I'm not speaking for them, that this matter, there's just enough nuances here. I mean, the magistrate judge's report, frank and to me, worries me some in terms of what's in there. I'm not sure, with no disrespect meant, that the district court honed in exactly on what the magistrate judge missed here, and so that deal wasn't really teed up as cleanly as it should be. I'll just put it like that. And so, assuming that you don't get, you know, box number one, that A, we have jurisdiction, and B, here's a nice, clean ruling, you can go back to New York. If we were of the mind to feel the district court erred, and we're sending it back, but so it's cabined in enough that it doesn't go all off the map, articulate for me sort of how that might apply. You follow my question? This is a question for the court's discretion, but I would submit to you that the record before the court is complete. I heard that part. I got it. I know what you want us to do. I'm just saying, assume for the, I mean, in terms of, you're saying it's complete enough for us to rule. Yes, sir. I got you. And I'm not asking you to abandon that as your principal thrust to us. But when the three of us start talking, we may, for reasons dear to us, look at this and say, no, I don't think. I mean, people come here on appeals from injunctions, and they want us to do, but we don't. We vacate and send it back to the district court with instructions to do X. And there are other areas I can give you example where we just don't do it. So I'm not asking you to abandon your principal argument, court of appeal decided because, because. I'm just asking you in a secondary zone that if the panel were not so persuaded that this is all driven for a nice neat pain to go back, what's the parameters of it going back? Is it an order to the district court to consider in the first instance that which she didn't? Or the chapter 15 piece that's driving it more? Do you get my drift? Reach and address the personal jurisdiction issue, which is the basis of our argument that Skadden was improperly joined. And therefore, the district court has diversity jurisdiction. Reach and decide that issue. And secondly, I would submit that on the bankruptcy-related jurisdiction issues, there's really nothing to instruct the district court about. We submit that was legal error. The court did not have discretion to abstain from the exercise of its bankruptcy-related jurisdiction. In which case, it wouldn't have to deal with the diversity. Well, that's. That's why Judge Stewart earlier thought it was cleaner until your opponent made it confusing, maybe potentially so. I would say that if this court had bankruptcy-related jurisdiction and had no legal right to abstain from the exercise of that jurisdiction, or to actively remand because the two should be read together, then that is a pure legal issue for this court to decide. And if it decides that, it's probably true that that is a basis for federal jurisdiction that would resolve the matter before the court. And that would be a fairly straightforward, easy way to go about it because of the express statutory carve-out of Chapter 15 cases. We've got a lot of other things in our brief, other cases that I've referred to. Oh, I understand. As I said, you responded to my question, and I appreciate the argument. I appreciate the argument of your side and you, Mr. Price, in the brief and in responding to the court's questions. I know it's a little dicey matter, to put it mildly, but that's why we set it for an argument to get some help from counsel on these rather intricate matters trying to weave these cases together and so on and so forth and all that. But three heads are better than one, so we'll figure it out in due course. With that, the case will be submitted. But before we take up the third and fourth cases, the panel will stand.